IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DIANNA DAVIS,                )
                             )
         Plaintiff,          )
                             )
    v.                       )   Civil Action No. 15-427
                             )
CAROLYN W. COLVIN,           )
ACTING COMMISSIONER OF       )
SOCIAL SECURITY,             )
                             )
         Defendant.          )

## MEMORANDUM AND ORDER OF COURT

AND NOW, this 6th day of September, 2016, upon due consideration of the parties' cross-motions for summary judgment relating to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for supplemental security income under Title XVI of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 11) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 9) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff protectively filed her pending application for supplemental security income on June 5, 2013, alleging a disability onset date of October 26, 2010, due to bipolar disorder, high blood pressure, asthma, a sleeping disorder and thyroid issues. Plaintiff's application was denied initially. At plaintiff's request an ALJ held a hearing on August 14, 2014, at which plaintiff, represented by counsel, appeared and testified. On September 12, 2014, the ALJ issued a decision finding that plaintiff is not disabled. On January 26, 2015, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 43 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §416.963(c). She has at least a high school education and has past relevant work experience as a deli worker and truck driver, but she has not engaged in any substantial gainful activity since her alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although plaintiff has the severe impairments of bipolar disorder, panic disorder without agoraphobia, arthritis, hypertension, hypothyroidism, asthma and bilateral sensorineural hearing loss, none of those impairments, alone or in combination, meet or equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

The ALJ also found that plaintiff retains the residual functional capacity ("RFC") to engage in work at the light exertional level but with numerous restrictions necessary to accommodate the limitations arising from her physical and mental impairments.[1] Taking into

---

[1] Specifically, the ALJ found that plaintiff has the following restrictions: "she is able to lift up to 20 pounds occasionally and 10 pounds frequently, except that she must be permitted to alternate sitting and standing every 2 hours. Further, she must avoid all exposure to chemicals and poorly ventilated areas. She can understand, remember and carry out simple instructions and make judgments on simple work-related

account these restrictions, a vocational expert identified numerous categories of jobs which plaintiff can perform based upon her age, education, work experience and residual functional capacity, including marker, garment bagger and sorter. Relying on the vocational expert's testimony, the ALJ found that plaintiff is capable of making an adjustment to numerous jobs existing in significant numbers in the national economy. Accordingly, the ALJ concluded that plaintiff is not disabled under the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability.[2] 20 C.F.R. §416.920. If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 540 U.S. 20 (2003).

---

decisions. Finally, the claimant must work isolated from the public, while having only occasional supervision and contact with coworkers." (R. 17).

[2] The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past-relevant work; and, (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of her age, education, work experience, and residual functional capacity. 20 C.F.R. §416.920; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). In addition, when there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations. Plummer, 186 F.3d at 432; 20 C.F.R. §416.920a.

Here, plaintiff's lone argument is that the ALJ improperly analyzed the medical evidence regarding her <u>mental</u> impairments.[3] Specifically, she argues that the ALJ erroneously discounted a period of time when plaintiff's anxiety reportedly worsened as a mere "temporary exacerbation of anxiety" rather than, as plaintiff construes it, as a "recurrence of disability following a temporary period of stability." Upon review, the court is satisfied that the ALJ correctly evaluated the medical evidence and that her evaluation is supported by substantial evidence.

The rules by which the ALJ is to evaluate the medical evidence are well-established under the Social Security Regulations and the law of this circuit. Opinions of treating physicians are entitled to substantial, and at times even controlling, weight. 20 C.F.R. §416.927(c)(2); <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001). Where a treating physician's opinion on the nature and severity of an impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, it will be given controlling weight. <u>Id</u>. However, when a treating source's opinion is not entitled to controlling weight, it is to be evaluated and weighed under the same standards applied to all other medical opinions, taking into account numerous factors, including the opinion's supportability, consistency and specialization. 20 C.F.R. §416.927(c).

Importantly, the opinion of any physician, including a treating physician, as to the claimant's residual functional capacity, or on the ultimate determination of disability, never is entitled to special significance. 20 C.F.R. §416.927(d); SSR 96-5p. "The law is clear ... that

---

[3] Plaintiff does not challenge the ALJ's decision or findings regarding her <u>physical</u> impairments and resulting limitations.

the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Brown v. Astrue, 649 F.3d 193, 197 n. 2 (3d Cir. 2011). Rather, "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." Chandler v. Commissioner of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011); *see* 20 C.F.R. §§416.927(d)(2) and (3); 416.946(c).

Here, the ALJ adhered to the foregoing standards in analyzing the relevant medical evidence relating to plaintiff's mental impairments. The decision specifically addressed all of the opinions and evidence from all of the relevant medical sources and the ALJ thoroughly explained her reasons for the weight she gave to each. (R. 19-21).

The ALJ acknowledged and discussed plaintiff's lengthy treatment history for a mood disorder, first at Turtle Creek Valley Mental Health/Mental Retardation (MH/MR), then briefly at Southwest Behavioral Care, then finally at Kreinbrook Psychological Services. The ALJ recognized that during her long-term treatment at Turtle Creek MH/MR, plaintiff's condition was "stable and well." (R. 19). During this time period, her mental status examinations were unremarkable with consistent "GAF" scores of 65, indicative of only mild symptoms.[4] (R. 19; 464-521). Plaintiff left Turtle Creek MH/MR when she moved to care for her mother. (R. 520). Upon her discharge on July 29, 2013, plaintiff was described as "much improved" with "good insight into her illness and her need for medication" and was assigned a GAF score of 65. (R. 520-21).

---

[4] The Global Assessment of Functioning ("GAF") score considered psychological, social and occupational functioning on a hypothetical continuum of mental health. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) (4th ed. 1994). Under the DSM-IV, a GAF rating of 61-70 indicated "some mild symptoms" or "some difficulty in social, occupational, or school functioning ... but generally functioning pretty well." The latest edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-5) no longer includes the GAF scale. *See* Hughes v. Colvin, 2016 WL 231676 at *2 n.2 (3d Cir., Jan. 20, 2016) (noting that the DSM–5 has abandoned the GAF scale as a measurement tool).

The ALJ also discussed plaintiff's treatment at Southwestern Behavioral Care beginning August 6, 2013, and into September of 2013, during which time plaintiff was stable on her medications. Although she was assigned a GAF of only 50 on initial intake, indicative of "serious" symptoms or difficulty in social or occupational functioning, the ALJ assigned that score little weight, as it was contradicted by her discharge score of 65 from Turtle Creek MH/MR only a week before and was inconsistent with the reports from Southwest Behavioral Care that her condition had improved with a good prognosis. (R. 19-20).

Finally, the ALJ specifically addressed the records from Kreinbrook Psychological Services, where plaintiff began treating on November 25, 2013, including a one-page report co-signed by Dr. Patty Jo Murray and Dr. Dennis W. Kreinbrook on May 29, 2014. (R 20-21). The "Murray/Kreinbrook report" assigned a GAF score of 50 and further suggested that plaintiff's "disability" causes her to have moods swings "including severe depressive episodes and extreme manic episodes contributing to impairments in her social and occupational functioning." (R. 580).

The court finds no error in the ALJ's rejection of the Murray/Kreinbrook report. Initially, as noted in her decision, it is for the ALJ alone to make the ultimate determination of disability, and the opinion of a treating physician that a claimant is disabled is not entitled to any special significance. Chandler, 667 F.3d at 361; 20 C.F.R. §416.927(d).

Moreover, the actual treatment records from Kreinbrook Psychological Services all are signed by Dr. Leyla Somen, and the record contains no treatment notes from either Dr. Murray or Dr. Kreinbrook. As correctly observed by the ALJ, the treatment records from Dr. Somen do not suggest the extreme mood swings, depressive episodes or manic episodes alleged in the one-page Murray/Kreinbrook report. Rather, Dr. Somen's notes consistently, with only one

exception, described plaintiff's mood as "neutral" and her mental status examinations consistently were characterized as unremarkable and normal throughout 2014. (R. 581-595).

Accordingly, because the Murray/Kreinbrook report was contradicted by the treatment records from Dr. Somen and the functional assessments from Turtle Creek MH/MR, the ALJ properly gave more weight to the records from those sources than the conclusory and unsupported Murray/Kreinbrook report. (R. 21). In addition, the state agency psychologist, Dr. Timothy Ostrich, found that plaintiff had no worse than moderate limitations in any area of mental health functioning, findings which also were consistent with the cumulative record.[5] (Id.)

Plaintiff takes issue with the ALJ's analysis of the foregoing evidence, in particular the ALJ's observation that the overall record indicates that plaintiff was doing "very well" before moving in with and caring for her mother from July 2013 to April 2014, resulting in "a temporary exacerbation of anxiety due to mother/daughter issues and stress," as well as with the ALJ's prediction that moving into a new place "should help [plaintiff's] overall mental state." (R. 21). Plaintiff's interpretation of the evidence is that the "temporary exacerbation of anxiety" noted by the ALJ in actuality was a "recurrence of disability following a temporary period of stability" while she was treating at Turtle Creek MH/MR. Accordingly, plaintiff contends that the ALJ's decision "stands for an unprecedented legal principle that if a claimant

---

[5] It is well-settled that "[a]lthough treating and examining physician opinions often deserve more weight than the opinions of doctors who review records ... [s]tate agent opinions merit significant consideration as well." Chandler, 667 F.3d at 361. Pursuant to the Regulations, state agency medical consultants are considered to be "highly qualified physicians ... who are also experts in Social Security disability evaluation." 20 C.F.R. §416.927(e)(2)(i). Accordingly, while not bound by findings made by reviewing physicians, the ALJ is to consider those findings as opinion evidence, and is to evaluate them under the same standards as all other medical opinion evidence. 20 C.F.R. §416.927(e)(2)(ii); SSR 96-6p.

partially recovers from a psychiatric disability, they can never have a disabling recurrence of that disability ... after a period of stability."

There are several flaws in plaintiff's argument. First, the ALJ did not find, and the evidence does not show, that plaintiff's mental impairment <u>ever</u> was disabling within the meaning of the Act. In support of her proposition, plaintiff refers solely to records from Turtle Creek MH/MR which assign plaintiff a number of GAF scores in the range of 45-48, indicative of "serious" symptoms or difficulties in social or occupational functioning.[6] However, with one exception, a score of 48 in February of 2011, all of these scores were assigned *prior to* plaintiff's alleged onset date of October 26, 2010. As the ALJ explained in detail in her decision, subsequent treatment notes from Turtle Creek MH/MR *during the relevant time period* establish that plaintiff was stable and doing well with unremarkable and normal objective findings during the course of her treatment there. (R. 20).

Second, the evidence does not show that the period from July of 2013 through April of 2014, after plaintiff's "temporary period of stability," marked a "recurrence" of disability. To the contrary, as explained by the ALJ in depth, the evidence even during this time period, as reflected in Dr. Somen's treatment records, as well as Dr. Ostrich's assessment, indicated that

---

[6] The court notes that GAF scores in the range of 45-48 are not *per se* "disabling." It long has been recognized that the use of the GAF scale is not endorsed by the Social Security Administration because its scores do not have any direct correlation to the disability requirements and standards of the Act, *see* 65 Fed.Reg. 50746, 50764-65 (2000), and courts have emphasized that a claimant's GAF score is <u>not</u> determinative of disability. *See* Gilroy v. Astrue, 351 Fed. Appx. 714, 715 (3d Cir. 2009)(recognizing that GAF scores do not have a direct correlation to the severity requirements of the Social Security mental disorder listings, and determining that a low GAF score is not conclusive evidence of a mental disability); Wind v. Barnhart, 2005 WL 1317040, *6 n.5 (11th Cir. 2005) (noting that the Commissioner has declined to endorse the GAF scale for use in the Social Security and SSI disability programs). Accordingly, absent evidence that a GAF score was meant to indicate a limitation in the ability to do work, the score alone is insufficient to establish disability. *See* Clayton v. Colvin, 2014 WL 5439796 (W.D.Pa., Oct. 24, 2014)(J. Fischer).

AO 72
(Rev. 8/82)

with regular treatment plaintiff's mental health is stable and results in no more than moderate limitations in any area of mental health functioning. (R. 21).

It is axiomatic in social security cases that the ALJ must give some indication of the evidence that she rejects and the reasons for discounting that evidence. Fargnoli, 247 F.3d at 43. Here, the ALJ reviewed and discussed all of the pertinent medical evidence and thoroughly explained her reasons for giving each relevant opinion the weight that she gave it. Plaintiff's plea that the evidence "deserves a more thorough and thoughtful analysis" essentially asks the court to re-weigh the evidence and arrive at a different conclusion than the ALJ. However, this court's task is not to conduct a *de novo* review nor to re-weigh the evidence; rather, review is limited to determining whether the ALJ's decision is supported by substantial evidence. Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986). The court is satisfied that the ALJ's evaluation of the medical evidence in this case is so supported.

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

*Gustave Diamond*
Gustave Diamond
United States District Judge

cc: Brian Patrick Bronson, Esq.
QuatriniRafferty
550 East Pittsburgh Street
Greensburg, PA 15601

Colin Callahan
Assistant U.S. Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219